IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MICHAEL TODD,<br><br>Petitioner,<br><br>vs.<br><br>FRAUENHEIM, Warden, Pleasant Valley State Prison,<br><br>Respondent. | No. 2:15-cv-00210-JKS<br><br>MEMORANDUM DECISION |

William Michael Todd, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Todd is in the custody of the

California Department of Corrections and incarcerated at Pleasant Valley State Prison.

Respondent has answered, and Todd has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On October 8, 2010, Todd was charged with the murder of David Endres.  The

information further alleged that Todd personally used a knife in the commission of the crime.

Todd pled not guilty and denied the allegation.  On direct appeal of his conviction, the California

Court of Appeal laid out the following facts underlying the charges against Todd:

> Memorial Day 2010 began with [Todd] and his wife, Traci, drinking beer at her cousin Larry Pinson's house.  David Endres (the victim) and Susan Childress were also drinking beer with [Todd], Traci, and Pinson.  Pinson, Childress, and Endres were good friends.  [Todd] and Endres appeared to know each other because earlier that day, when Endres introduced [Todd] to Childress, he referred to [Todd] as "my friend Bill" and "a cool guy."  There was no evidence that Endres had a prior relationship with Traci.  At about 8:10 p.m., [Todd] and Endres rode in the same car with Pinson and Traci to Childress's apartment to continue drinking.  Pinson stated that he did not recall any angry words or problems in the car ride over to Childress's apartment between [Todd] and

Endres, or between Endres and Traci.  Dorothy Lenz, Childress's sister, was also present in the apartment.

At one point, [Todd], Endres, Pinson, and Traci were outside the front door on the landing smoking cigarettes, talking, and drinking beer.  Pinson turned to put out a cigarette in an ashtray when he heard a thud.  From "out of nowhere," [Todd] became mad, said something about Endres looking at his wife, and stabbed Endres in the chest.  Endres was holding his chest, saying, "What the fuck?"  Childress stated that, from inside her apartment, she heard Endres say, "What the fuck you do that for homeboy?"  He then fell backwards through the front door, and Childress caught him as he fell in the doorway. [Todd] immediately ran away.  Blood was everywhere, and despite efforts to save his life, Endres died quickly.

There was no prior argument between [Todd] and Endres.  No yelling, arguing, or punching occurred on the landing.  Childress and Pinson thought that [Todd] and Endres were friends.  The attack was unprovoked.  There was no evidence that [Todd] was suffering from paranoia, delusions, or hallucinations.

Endres was stabbed twice by a single-edged knife in essentially the center of his torso.  One wound was on the lower left chest and measured four-and-a-half inches deep.  It sliced open the bottom of his heart, causing the heart sac to fill with blood.  The other wound was in the mid-upper abdomen and measured four inches deep.  It cut the edge of his liver and perforated his stomach.  Both wounds had rectangular hilt marks, meaning that the knife went all the way in with enough force to have the hilt leave a mark.  Each wound could have been fatal by itself, but the wound to the heart would have caused death more rapidly.  Endres's defensive wounds, cuts to his left palm and right little finger, indicated that he was aware that he was being attacked.

After stabbing Endres, [Todd] immediately ran down the stairs and away from the scene.  Multiple eyewitnesses in the neighborhood testified that they saw [Todd], who attempted to get into locked cars parked in the area, throw his wallet in someone's yard.  [Todd] entered a bush with his shirt on, and a few minutes later, left the bush shirtless.  [Todd]'s keys were found in a bush in the neighborhood.  Blood was found on [Todd]'s shirt which matched Endres's DNA profile.

Pinson and Childress testified that they did not see [Todd] or Endres use methamphetamine that day.  A blood sample from Endres had 0.08 milligrams per liter of methamphetamine and 0.02 milligrams per liter of amphetamine.  A blood sample from [Todd] showed a level of 0.11 milligrams per liter of methamphetamine and 0.02 milligrams per liter of amphetamine.  [Todd]'s level of methamphetamine could be considered in both the therapeutic range and the abuse range.

Philip Mitchell, a friend of Traci's, testified at trial that, in August 2009, [Todd] had attacked him with pepper spray or mace.  Mitchell was traveling with Traci in a car to help get her things at her house because she was having domestic problems with [Todd]. Before Mitchell and Traci arrived at her house, [Todd] pulled up in another car, jumped out, ran up to their car, and sprayed Mitchell with mace or pepper spray.

*People v. Todd*, No. C068975, 2014 WL 104422, at *1-2 (Cal. Ct. App. Jan. 10, 2014).

On March 23, 2011, Todd proceeded to a jury trial.  On April 18, 2011, the jury found

Todd guilty of first-degree murder and also found that Todd personally used a knife in the crime.

Prior to sentencing, Todd filed a *Marsden*[1] motion to substitute counsel based on inadequate

representation.  At the *Marsden* hearing, Todd complained that counsel had failed to request an

instruction on voluntary manslaughter and had not timely reviewed a psychiatric report that

caused counsel to break his opening argument promise that he would offer an expert witness.

The trial court denied the motion.  It later sentenced Todd to an aggregate term of 26 years to life

imprisonment.

Through counsel, Todd appealed his conviction, arguing that: 1) the trial court should

have *sua sponte* instructed the jury on the lesser-included offense of voluntary manslaughter;

2) trial counsel was ineffective for failing to request a voluntary manslaughter instruction;

3) trial counsel was ineffective for failing to request an instruction telling the jury that

provocation may reduce murder from first degree to second degree; 4) trial counsel was

ineffective for promising in his opening argument that he would present an expert who he

ultimately declined to offer; 5) there was insufficient evidence of premeditation and deliberation

to sustain the jury's first-degree murder verdict; and 6) the trial court abused its discretion in

denying his *Marsden* motion.  The Court of Appeal unanimously affirmed the judgment against

Todd in an unpublished, reasoned decision issued on January 10, 2014.  *Todd*, 2014 WL 104422,

at \*7.  Todd petitioned for review in the California Supreme Court, which was summarily denied

on April 9, 2014.

---

[1]     *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial
court to deny a defendant's motion to relieve his court-appointed attorney without holding a
hearing to allow the defendant to explain its grounds).

Todd timely filed a *pro se* petition to this Court on January 21, 2015.  *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Todd raises the same arguments he unsuccessfully raised on appeal to the state courts, namely that: 1) the trial court erred in failing to *sua sponte* instruct the jury on the lesser-included offense of voluntary manslaughter; 2) trial counsel was ineffective for failing to request the voluntary manslaughter instruction; 3) trial counsel was ineffective for failing to request a pinpoint instruction on provocation; 4) trial counsel was ineffective for not offering expert testimony that it had promised the jury in opening argument that it would hear; 5) there was insufficient evidence of deliberation and premeditation to support the first-degree murder verdict; and 6) the trial court erred in denying his pre-sentencing *Marsden* motion.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.      *Instructional Error* (Ground 1)

Todd first argues that the trial court erred in failing to instruct the jury *sua sponte* on voluntary manslaughter.

Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the

law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Here, Todd contends that the trial court's obligation to *sua sponte* instruct the jury on all lesser included offenses reasonably raised by the evidence required the court to instruct his jury on voluntary manslaughter based on a theory of sudden quarrel or heat of passion/provocation. In rejecting this claim on direct appeal, the Court of Appeal laid out the following guidelines under California law:

> "'Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter. (§ 192.)' [Citations.]" (*People v. Breverman*, supra, 19 Cal.4th at p. 154.) "For purposes of voluntary manslaughter, an intentional unlawful killing can lack malice when the defendant acted under a ' " 'sudden quarrel or heat of passion' " ' or when the defendant acted under ' "[an] unreasonable but good faith belief in having to act in self-defense." ' [Citation.]" (*People v. Blacksher* (2011) 52 Cal.4th 769, 832.)

> "Although section 192, subdivision (a), refers to 'sudden quarrel or heat of passion,' the factor which distinguishes the 'heat of passion' form of voluntary manslaughter from murder is provocation.  The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations.]  The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]" (*People v. Lee* (1999) 20 Cal.4th 47, 59.)

*Todd*, 2014 WL 104422, at *2.

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases.  The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding.").  Accordingly, the decision of the California courts denying Todd relief as to this claim was not contrary to United States Supreme Court authority as set forth in *Beck*.

Nevertheless, the Ninth Circuit has recognized that "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim" under clearly established United States

Supreme Court precedent.  *Solis*, 219 F.3d at 929.  Contrary to Todd's argument, however, as the

Court of Appeal reasonably concluded, "[h]ere, there was no substantial evidence to support the

instruction because there was no evidence of sufficient provocation."  *Todd*, 2014 WL 104422, at

*3.  The appellate court reasoned:

> Before stabbing the victim, [Todd] accused him of looking at his wife.  No
> arguing, yelling, or fighting preceded [Todd's] attack on the victim.  Merely looking at
> another man's wife may provoke a dirty look or a punch in the nose, but it does not cause
> an ordinary person of average disposition to stab a person multiple times in the chest and
> abdomen.  Because the evidence was not sufficient to support the instruction on
> voluntary manslaughter, the trial court did not err by omitting it.

*Id.*

As the Court of Appeal reasonably concluded based on its review of the record, the

evidence presented at trial simply did not support a defense that Todd committed the offense out

of provocation or heat of passion.  Notably, Todd did not assert any theory of voluntary

manslaughter other than provocation or heat of passion.  Rather, the defense argued to the jury

that Todd was guilty at most of involuntary manslaughter because he was intoxicated or

unconscious to the point where he was unable to deliberate or form malice.  Because an

instruction on the lesser included offenses was not consistent with his theory of the case and not

supported by the evidence, no due process violation arose from the failure to instruct the jury on

the lesser included offenses.  *See Bradley v. Duncan*, 315 F.3d 1091, 1098-1101 (9th Cir. 2002)

(finding federal due process violation where defendant's request for instruction on the only

theory of defense was denied); *Solis*, 219 F.3d at 929.

In addition to the possibility of demonstrating a due process violation based on the failure

to instruct on a theory of the defense, clearly established federal law provides that, in order to

establish a violation of his federal due process rights by the failure to give a requested jury

instruction, Todd must demonstrate that the instruction should have been given, and that its omission "so infected the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 154; *see Clark v. Brown*, 442 F.3d 708, 726 (9th Cir. 2006) (holding that trial court's failure to give instruction was not harmless because there was a "reasonable probability" that, armed with the omitted instruction, the jury would have concluded that the arson was "incidental" and that the felony-murder special circumstance was not true).  Here, Todd has not carried this heavy burden because, as the Court of Appeal noted, there was a lack of evidence of provocation from which the jury could conclude that Todd was liable only for voluntary manslaughter.  Moreover, the jury found Todd guilty of premeditated, deliberate murder under a properly given instruction, and as more thoroughly discussed *infra*, therefore implicitly rejected any theory that Todd acted impulsively or without careful consideration.  It is thus clear that the failure to instruct on voluntry manslaughter could not have had any adverse effect whatsoever on the jury's decision, much less the "substantial and injurious effect" required to show the error was harmful.  *Brecht*, 507 U.S. at 637.  Accordingly, Todd is not entitled to relief on this instructional error claim.

B.      *Ineffective Assistance of Counsel* (Grounds 2, 3, 4)

Todd next contends that his trial counsel provided ineffective assistance for a number of reasons.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Todd must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

1.       Failure to request instructions

Todd first faults counsel for failing to request a voluntary manslaughter instruction. But as discussed in Ground 1, however, such instruction was not warranted. Todd therefore cannot show that counsel was ineffective in this regard. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

Todd similarly argues that counsel was ineffective for failing to request a pinpoint instruction that evidence of provocation may reduce a murder from first degree to second degree. The Court of Appeal considered and rejected this claim as follows:

> [Todd] claims that CALCRIM No. 522 should have been given, which instruction stated in relevant part: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder." (CALCRIM No. 522.)
> Even assuming, for the purpose of argument, that defense counsel should have requested an instruction concerning provocation and the degree of murder, there was no prejudice. To determine the probability that the pinpoint instruction would have achieved a different outcome, we examine the instructions given in this case. The jury was instructed, using CALCRIM No. 520, to decide whether [Todd] committed murder and, if so, whether it was in the first degree or second degree. The court then instructed

the jury using CALCRIM No. 521 on first degree murder.  This instruction stated: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death. [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time.  [¶]  The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of first degree murder."

 Considering CALCRIM No. 520 and CALCRIM No. 521, which were given to the jury, we see that the jury was not precluded from finding [Todd] guilty of second degree murder rather than first degree murder based on provocation had they so chosen. CALCRIM No. 520 instructed the jury to decide between first degree and second degree murder.  Then CALCRIM No. 521 expressly stated that, if the People failed to prove [Todd] acted willfully, deliberately, and with premeditation, the jury must find [Todd] not guilty of first degree murder.  The instructions given provided the jury the framework to decide whether [Todd] was guilty of first degree or second degree murder.  The jury found [Todd] guilty of first degree murder.  In doing so, the jury concluded that [Todd] had acted with premeditation and deliberately killed Endres.

 [Todd's] contention fails because he has not demonstrated prejudice.  Even if a pinpoint instruction had been given, it is not reasonably probable that [Todd] would have received a more favorable result.

*Todd*, 2014 WL 104422, at *3-4.

The Court of Appeal's conclusion is both reasonable and fully supported by the record.

For the reasons persuasively and thoroughly explained by that court, Todd fails to demonstrate

prejudice and is not entitled to relief on this claim.

2.      Failure to call expert witness

Todd additionally argues that trial counsel was ineffective for not calling an expert

witness who he had told the jury in opening argument would testify.  The Court of Appeal laid

out the following facts underlying this claim:

> In his opening statement, the prosecutor outlined [Todd's] motive for murder as jealousy involving his wife.  Traci had made pretrial statements to the police that [Todd] became jealous when taking methamphetamine.  However, Traci asserted her spousal privilege at trial and did not testify against [Todd].  During trial, the prosecutor did not refer to Traci's pretrial statements because of the privilege.
>
> Defense counsel said in his opening statement that he would call Dr. Jennifer Chaffin, a psychiatrist, who would testify about [Todd's] amphetamine-induced psychotic disorder with hallucinations, delusions, and paranoia at the time of the stabbing.  Counsel stated that she would opine that such a person, when intoxicated, might not form the required specific intent for murder.  However, defense counsel did not call her to testify.
>
> Before sentencing, at a *Marsden*[FN2] hearing, [Todd] claimed that defense counsel failed to review the psychiatric report until the evening before trial which resulted in his decision not to present Dr. Chaffin as a witness.  Defense counsel explained that his reason for not calling Dr. Chaffin to the stand was that, after the prosecution's case-in-chief, he believed the prosecutor had failed to prove the jealousy motive, and had failed to prove premeditation and deliberation.  Counsel believed Dr. Chaffin's testimony would strengthen the prosecution case because Dr. Chaffin's report included Traci's statements to police that her husband was a jealous man when taking methamphetamine.  Consequently, calling Dr. Chaffin to testify was the only way the People could get Traci's statements into evidence.  This concerned defense counsel since the prosecution was attempting to prove first degree murder based on a jealousy motive.  Counsel explained at the *Marsden* hearing that he had discussed all strategic moves with [Todd] before any decisions were made.  Counsel stated that, after he and [Todd] considered the strengths and weaknesses of the prosecution's case, it was a mutually agreed upon strategic decision not to call Dr. Chaffin to the stand.  Counsel believed that the decision was made together, and [Todd] was satisfied with it.  He had thoroughly discussed this with [Todd] the night before and decided to rely on the state of the People's case instead of presenting Dr. Chaffin to the jury.

> FN2.   *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

> At the conclusion of the *Marsden* hearing, the court found the most important issue was defense counsel announcing to the jury that "there would be the presentation of a doctor that methamphetamine use would negate specific intent or malice aforethought and then not calling that doctor."  The court stated that "it might have hurt your case to a

trier of fact.  They're expecting something they did not get."  However, the court went on to state that it appeared to be a calculated decision, with [Todd's] consent, to rest without the testimony of Dr. Chaffin based on counsel's belief that it would be more harmful than beneficial.  The court noted that the decision seemed to be based on proper preparation, investigation, and background.

*Todd*, 2014 WL 104422, at *4-5.

"'[I]n some cases—particularly cases where the promised witness was key to the defense theory of the case and where the witness's absence goes unexplained—a counsel's broken promise to produce the witness' may amount to prejudicial deficient performance."  *Foster v. Oregon*, 587 F. App'x 356, 358 (9th Cir. 2014) (quoting *Saesee v. McDonald*, 725 F.3d 1045, 1049-50 (9th Cir. 2013)).  Todd fails to demonstrate that this is one of those cases.  The record here reflects that counsel was faced with a difficult decision: either break the promise to the jury and risk losing the jury's trust, or put the expert on anyway and risk helping the prosecution's case by opening the door to Traci's statements regarding Todd's jealousy.  As the Supreme Court has explained, counsel has "wide latitude . . . in making [such] tactical decisions."  *Strickland*, 466 U.S. at 689.  The state appellate court reasonably concluded that the decision to break the promise made in opening statements in light of these competing concerns was a "sound trial strategy."  *Id.* (internal quotation marks and citations omitted); *see Foster*, 587 F. App'x at 358 (rejecting ineffective assistance claim based on counsel's broken promise to call medical expert who had, as a result of unforeseen circumstances, agreed with the State's medical witnesses).  Todd is therefore not entitled to relief on this ineffective assistance claim either.

C.      *Sufficiency of the Evidence* (Ground 5)

Todd next claims that there was insufficient evidence of deliberation and premeditation to sustain his first-degree murder conviction.  As articulated by the Supreme Court in *Jackson*,

the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443

U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33

(2010) (reaffirming this standard).  This Court must therefore determine whether the California

court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the

role of the finder of fact by considering how it would have resolved any conflicts in the

evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.

Rather, when "faced with a record of historical facts that supports conflicting inferences," this

Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact

resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority

for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

Consequently, although the sufficiency of the evidence review by this Court is grounded in the

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system

is "that a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the

state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be

accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In support of his claim, Todd argues again that his words about Endres looking at his wife showed provocation rather than premeditation and deliberation. But all of the evidence he identifies in support of his claim was before the jury for its assessment. This Court is precluded from re-weighing the evidence. *Schlup*, 513 U.S at 330. In rejecting this claim on direct appeal, the Court of Appeal concluded:

> Here, a reasonable jury could find premeditation and deliberation based on all three types of evidence: planning, motive, and manner of killing.
> As to evidence of planning, [Todd] brought a knife with him to Childress's apartment where the murder occurred. (*People v. Steele* (2002) 27 Cal.4th 1230, 1250 ["As to planning, the jury could infer that defendant carried the fatal knife into the victim's home in his pocket, which makes it 'reasonable to infer that he considered the

possibility of homicide from the outset.' "].)  In addition, [Todd] stabbed Endres in his chest and abdomen, rather than the arm or leg, which is further evidence that he planned to kill him.

Likewise, there is evidence of jealousy to support the motive theory.  Moments before stabbing Endres, [Todd] accused him of looking at his wife, apparently in an inappropriate way.  The jury heard evidence that one year prior to the stabbing, [Todd], apparently in a jealous rage, had sprayed Mitchell with mace or pepper spray while Mitchell was riding in a car with Traci.  Based on this evidence, a reasonable jury could infer that [Todd] stabbed Endres out of jealousy involving his wife.

Finally, the manner of killing demonstrates [Todd's] actions were deliberate and premeditated.  [Todd] forcefully plunged a knife into Endres's torso two separate times to a depth of four-and-one-half inches and four inches.  One stab wound was to the heart and the other to the abdomen.  Each stab by itself could have been fatal.  The placement of the two stab wounds, along with the hilt marks, which indicated the force of the stabs, support the conclusion that the wounds were deliberately calculated to result in Endres's death.  (*People v. Anderson*, *supra*, 70 Cal.2d at pp. 33–34.)

There was sufficient evidence to support premeditation and deliberation for first degree murder.

*Todd*, 2014 WL 104422, at *6.

Viewing that evidence in the light most favorable to the verdict, a reasonable juror could certainly infer that Todd acted with premeditation and deliberation.  As the California courts have frequently held, premeditation does not require an extended period of time.  *See, e.g.*, *People v. Thompson*, 231 P.3d 289, 321 (Cal. 2010).  "The test is not time, but reflection. 'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'" *Id.* (quoting *People v. Osband*, 919 P.2d 640 (Cal. 1996)).  Although it might have been possible to draw a different inference from the totality of the evidence, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Thus, considering the deference owed under *Jackson*, *Cavazos*, and the AEDPA, this Court must conclude that there was sufficient evidence introduced at trial from which a rational trier of fact could have found beyond a reasonable doubt that Todd was guilty of the first-degree murder of Endres.  Todd is therefore not entitled to relief on his insufficiency of the evidence claim.

-18-

D.     _Denial of Marsden Motion_ (Ground 6)

Finally, Todd argues that the trial court abused its discretion when it denied his _Marsden_

motion to relieve counsel and to appoint new counsel.  As previously discussed, Todd

unsuccessfully moved to relieve counsel on the ground that counsel had failed to request an

instruction on voluntary manslaughter and had not timely reviewed a psychiatric report that

caused counsel to break his opening argument promise that he would offer an expert witness.

The Sixth Amendment right to counsel guarantees to an accused the concomitant rights to

conflict-free representation and the effective assistance of counsel.  _See Wheat v. United States_,

486 U.S. 153, 156 (1988); _Strickland_, 466 U.S. at 686.  The denial of a _Marsden_ motion may

implicate the Sixth Amendment right to counsel.  _Schell_, 218 F.3d 1017, 1023 (9th Cir. 2000) (en

banc); _Bland v. Cal. Dep't of Corrs._, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled on other

grounds in _Schell_, 218 F.3d at 1025-26; _Hudson v. Rushen_, 686 F.2d 826, 828-29 (9th Cir. 1982).

The Sixth Amendment right to counsel includes a qualified right to retain counsel of

choice.  _See Schell_, 218 F.3d at 1025 (citations omitted).  However, an indigent defendant, while

entitled to appointed counsel, is not constitutionally entitled to appointed counsel of choice.

_Hendricks v. Zenon_, 993 F.2d 664, 671 (9th Cir. 1993).  When a criminal defendant requests a

substitution of counsel, the trial court is constitutionally required to inquire about the defendant's

reasons for wanting a new attorney.  _Schell_, 218 F.3d at 1025 ("[I]t is well established and clear

that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such

a motion, and that the matter be resolved on the merits before the case goes forward.").  The

Supreme Court has, however, "reject[ed] the claim that the Sixth Amendment guarantees a

'meaningful relationship' between an accused and his counsel."  _Morris v. Slappy_, 461 U.S. 1,

-19-

13-14 (1983).  The ultimate question before this Court then is not whether the state trial court

abused its discretion in denying Todd's motion but whether its denial "actually violated [Todd's]

constitutional rights in that the conflict between [Todd] and his attorney had become so great

that it resulted in a total lack of communication or other significant impediment that resulted in

turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."

*Schell*, 218 F.3d at 1026.  The Ninth Circuit has explained:

> The test for determining whether the trial judge should have granted a substitution
> motion is the same as the test for determining whether an irreconcilable conflict existed.
> The court must consider: (1) the extent of the conflict; (2) whether the trial judge made
> an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion
> to substitute counsel.

*Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

Here, the record reflects that Todd was given an opportunity to address his concerns with

counsel to the court.  Although his discussion with the court was brief, there is no indication that

Todd was in any way prevented from sharing his concerns with the court.  *See United States v.*

*Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding inquiry adequate where defendant "was

given the opportunity to express whatever concerns he had, and the court inquired as to [defense

counsel's] commitment to the case and his perspective on the degree of communication").  With

respect to the nature and extent of the alleged conflict with counsel, the substance of Todd's

complaints appear to amount to a disagreement over defense trial tactics.  However, it is well-

established that tactical matters are within the purview of trial counsel's discretion and

disagreements over them do not necessitate substitution of counsel.  *United States v. McKenna*,

327 F.3d 830, 844 (9th Cir. 2003) (holding that dispute over trial tactics "is not a sufficient

conflict to warrant substitution of counsel").  Further, Todd moved to substitute counsel after

trial and prior to sentencing.  Accordingly, the timing of Todd's *Marsden* motion does not

support substitution of counsel either.  Because Todd fails to demonstrate that the facts

enumerated by the Ninth Circuit in *Daniels* weighed in favor of granting his substitution motion,

Todd cannot show that he was denied his Sixth Amendment right to counsel and is therefore not

entitled to relief on this claim.

E.      *Request for an Evidentiary Hearing*

Todd further requests an evidentiary hearing on all of his claims.  A district court may

not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis

in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of

constitutional law that the Supreme Court has made retroactive to cases on collateral review, or

(b) a factual predicate that could not have been previously discovered through the exercise of

due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and

convincing evidence that, but for constitutional error, no reasonable fact finder would have

found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings

is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a

colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293

(1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the

Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on

his factual allegations if: (1) the merits of the factual dispute were not resolved in the state

hearing; (2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and

fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material

facts were not adequately developed at the state-court hearing; or (6) for any reason it appears

that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at

670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504

U.S. 1 (1992).

As discussed above, Todd has failed to assert a colorable claim for relief.  *See Bashor v.*

*Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on

issues which can be resolved on the basis of the state court record).  Because he does not cite to

new laws or underlying facts that were not developed on the record before the state courts with

respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C.

§ 2254(e)(2).  Todd's request for an evidentiary hearing must therefore also be denied.

## V. CONCLUSION AND ORDER

Todd is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.

      The Clerk of the Court is to enter judgment accordingly.

      Dated: July 7, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
